# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **J.M. B/N/F J.M. & S.M., J.M., S.M.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | No.  5:23-CV-01547-LS |
| | § | |
| **COMAL INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff J.M., and his parents J.M. and S.M., sue Defendant Comal Independent School District under the Individuals with Disabilities Education Act ("IDEA") for failing to provide a free and appropriate public education ("FAPE") through the student's individualized education plan ("IEP"). The Court denies Plaintiffs' motion for summary judgment and grants Defendant's motion for summary judgment.

## I.    STANDARD OF REVIEW.

A court generally grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1] But "in IDEA proceedings, summary judgment 'is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed.'"[2] While the Court "is required to 'accord "due weight"

---

[1] Fed. R. Civ. P. 56.
[2] *Seth B. ex rel. Donald B. v. Orleans Parish School Bd.*, 810 F.3d 961, 967 (5th Cir. 2016) (quoting *Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 (E.D.N.Y. 1996)).

to the hearing officer's findings,'" it must also "reach an independent decision based on the preponderance of the evidence."[3] The standard of review is, therefore, "virtually de novo."[4]

Still, "courts must be careful to avoid imposing their view of preferable educational methods upon the States."[5] IDEA leaves responsibility "for choosing the educational method most suitable to the child's needs . . . to state and local educational agencies in cooperation with the parents or guardians of the child."[6] Congress did not intend for "courts to overturn a State's choice of appropriate educational theories in a proceeding conducted under" IDEA.[7]

## II.    ANALYSIS.

Before the Court is Plaintiffs' appeal of the Texas Hearing Officer's conclusion that the school district "provided Student with a FAPE and a program reasonably calculated [to] enable Student to make progress appropriate in light of his circumstances."[8] As the party challenging the IEP, Plaintiffs bear "the burden of showing that the IEP and the resulting placement are inappropriate under IDEA."[9] The Court finds that this case's Hearing Officer correctly recited the controlling law and applied it to the facts supported in the record.

### A.    *Failure to Implement the IEP.*

This case largely turns on the initial matter of whether the district implemented the IEP at all, rather than whether the IEP was appropriate when it was in effect. The district found that the

---

[3] *Id.* at 966 (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997)).

[4] *Id.* at 967; *see also* 20 U.S.C. § 1415(i)(2)(C) ("[T]he court . . . basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.").

[5] *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982) ("[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.").

[6] *Id.* at 207.

[7] *Id.* at 207–08.

[8] ECF No. 41 at 6.

[9] *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 n.4 (5th Cir. 2009).

initial site for homebound services, J.M.'s bedroom, was impractical because of the room's size, overstimulating environment, and his parents' alleged intrusions.[10] On the same day it determined that it could not continue services in J.M.'s bedroom, the district proposed alternative locations outside the home, such as public libraries.[11] When the parents objected, the district proposed other locations and parameters for education inside the home.[12] J.M.'s parents refused these offers and denied that any factors mandated changing J.M.'s location. After deeming the bedroom unfit the district stopped providing services to J.M.

Requiring relocation outside the home could constitute a failure to implement the IEP, which required a homebound placement.[13] But the district repeatedly attempted to hold meetings with J.M.'s admission, review, and dismissal committee—which decides his placement—to reevaluate J.M.'s conditions and needs, and sought access to J.M.'s medical records to ascertain appropriate alternatives and the least restrictive environment.[14] J.M.'s parents refused access to records and frequently refused to schedule meetings.[15] "If a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on independent evaluation. . . . [T]here is no exception to the rule that a school district has a right to test a student itself in order to evaluate or reevaluate a student's eligibility under IDEA."[16]

---

[10] *See, e.g.*, ECF No. 41 at 1720, 2217–226, 2236, 2514–28, 2690–94.
[11] *Id.* at 1771–86, 1910, 2694–95.
[12] *Id.* at 1700.
[13] 19 Tex. Admin. Code § 89.1005(e)(2) ("Homebound . . . is for providing special education and related services to students who are served at their home . . . ."). *But see* ECF No. 41 at 2697 ("[W]e have had several students that have participated in homebound instruction outside of their physical home.").
[14] *See, e.g.*, ECF No. 41 at 1902–11.
[15] *Id.* at 1910 ("We were unable to complete that meeting and since that time, despite our attempts to reconvene on numerous dates, we have been unable to get your commitment for timely collaboration. . . . In the meantime, as a result of this delay, the District is concerned with a sense of urgency to reinstate [J.M.'s] educational services . . . ."); *see also id.* at 1927–29.
[16] *Andress v. Cleveland Indep. Sch. Dist.*, 64 F.3d 176, 178–79 (5th Cir. 1995).

Furthermore, the record supports the district's contention that it could not fully implement the IEP because of conditions in the home, refuting Plaintiffs' argument that the district abruptly terminated services without cause. The district did not fail to implement the IEP when, for example, services paused after an instructor "cowered in—in a corner of the room" because she "didn't feel safe" in the home.[17] Out of J.M.'s five homebound instructors, four "asked to not be in that role" because of "the same concerns about . . . the environment in the home."[18]

### 1.      Offer to resume homebound services.

The district later revised its offer and proposed resumption of services within the home because of J.M.'s parents' safety concerns, but J.M.'s parents rejected this offer.[19] As an initial matter, this rejection forecloses any argument that the district should have revised the IEP earlier. Next, the Court notes that although J.M.'s placement was homebound, the district was within its right to relocate instruction from J.M.'s bedroom to another part of the house.[20] Its revised proposal maintained homebound services,[21] so it did not alter the IEP's "placement." And a school district need not consider a parent's preferred location within the home.[22] Even so, the district never insisted on an exact location within the home, but merely sought "[a] teacher recommended workspace within the residence established in an open environment and common area (such as a

---

[17] ECF No. 41 at 2530, 2814–15; *see also id.* at 2516 (refusing access to J.M.'s assisted communication device); *id.* at 2517–18 (prohibiting instructor from photographing educational materials); *id.* at 2518–19 (recording instructor without instructor's knowledge or consent); *id.* at 2235–36 (same).

[18] *Id.* at 2694.

[19] *Id.* at 1700, 1924–25.

[20] *See E.R. ex rel. E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 770 (5th Cir. 2018).

[21] *See* ECF No. 41 at 1700 ("Comal ISD will remain ready, willing, and able to provide . . . instructional and related services in your residence.").

[22] *See E.R. ex rel. E.R.*, 909 F.3d at 770 ("[E]ven though 'parents must be involved in determining "educational placement,"' they do not have to 'be involved in site selection.'" (quoting *White ex rel. White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003))).

dining room or living room)."[23] The district's sole prohibition was J.M.'s bedroom,[24] and its parameters for a suitable environment were well within an educational authority's discretion.[25] The Court need not and should not be in the business of selecting which room in the home would be the ideal educational environment.[26]

J.M.'s parents rejected the district's offer because "the district wants to come in and look around our house and decide which room is appropriate."[27] The district made a reasonable offer to continue homebound services, even though the parents refused any reevaluation of J.M., and J.M.'s parents rejected the offer.

### 2.    Training.

Plaintiffs also argue that the district did not implement the IEP because J.M.'s teachers lacked necessary training to execute the IEP. But the district's records demonstrate that J.M.'s teachers underwent significant training in special education generally,[28] and in matters unique to J.M.'s needs.[29] As discussed below, the IEP succeeded during the short period that the district provided services, belying any argument that its teachers were inadequately trained.

---

[23] ECF No. 41 at 1700.

[24] The parties contest whether the initial site was J.M.'s bedroom or a separate workspace designed for educational use, and whether Defendant accurately characterized the room's problems. Parents are not entitled to participate in site-selection, see *E.R. ex rel. E.R.*, 909 F.3d at 770, and school districts have "primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs." *Hendrick Hudson v. Rowley*, 458 U.S. at 207. Therefore, the school district can judge whether an educational environment is suitable, and the Court, which "lack[s] the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy,'" accepts the educational authority's finding that the room was inadequate. *Id.* at 208 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).

[25] *See Hendrick Hudson v. Rowley*, 458 U.S. at 206–08.

[26] *See Endrew F. ex rel. Joseph F. v. Douglas Cnty, Sch. Dist. RE-1*, 580 U.S. 386, 387 (2017) ("Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal."); *see also Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478, 483–84 (4th Cir. 2011) ("Although the IDEA requires an appropriate education, it 'does not require a perfect education.'" (quoting *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 328 (4th Cir. 2009))).

[27] ECF No. 41 at 1787.

[28] *See e.g., id.* at 1892–1900.

[29] *Id.* at 1888–1891, 1932–38, 2202–2205, 2504, 2689.

### B.        Reasonably Calculated IEP.

The next issue is whether the district's offer would have provided J.M. a FAPE. A state fulfills its IDEA obligations when the IEP is "reasonably calculated to enable the child to receive educational benefits."[30] The four-factor test is whether "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated."[31] IEPs "need not provide . . . students with the best possible education, nor one that will maximize [a] student's educational potential."[32] "Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal."[33]

### 1.        Individualized on the basis of assessment and performance.

An IEP "must provide a 'basic floor of opportunity' that 'consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the disabled child."[34] A school district individualizing an IEP should account for (1) the child's strengths, (2) parents' concerns "for enhancing the education of their child," (3) the child's initial and most recent evaluations, and (4) the child's "academic, developmental, and functional needs."[35] In this case, Plaintiffs do not allege "procedural violations in the development of the IEP," but argue instead "that the IEP ceased to be implemented at all without any justification."[36]

---

[30] *Hendrick Hudson v. Rowley*, 458 U.S. at 206–07.

[31] *E.R. ex rel. E.R.*, 909 F.3d at 765 (quoting *Cypress-Fairbanks v. Michael F.*, 118 F.3d at 253).

[32] *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583 (5th Cir. 2009).

[33] *R.S. ex rel. Ruth B. v. Highland Park Indep. Sch. Dist.*, 951 F.3d 319, 330 (5th Cir. 2020) (quoting *Endrew F. v. Douglas Cnty.*, 580 U.S. at 387).

[34] *Houston v. V.P.*, 582 F.3d at 583 (brackets omitted) (quoting *Hendrick Hudson v. Rowley*, 458 U.S. at 201).

[35] 34 C.F.R. § 300.324(a)(1)(i)–(iv).

[36] ECF No. 39 at 18.

Plaintiffs "accept[] that the IEP as developed was designed to provide FAPE and thus should have provided FAPE if implemented appropriately."[37] The record shows an extensive, multi-year effort with frequent meetings to tailor the IEP to J.M.'s needs,[38] and the IEP successfully supported J.M.'s progression while it was in place.[39] The Court concludes that the district's program was reasonably calculated to enable J.M. to receive educational benefits.

### 2.    Administered in the least restrictive environment.

In general, IDEA seeks to "mainstream" a student, which means a school district will educate a student in an ordinary classroom setting to the extent possible, departing from the mainstream model when necessary.[40] The parties agree that J.M.'s needs justified homebound learning, and the IEP's homebound placement was calculated to enable J.M.'s educational success. Plaintiffs do not challenge homebound placement, but rather where in the home instruction should occur.

### 3.    Provided in a coordinated and collaborative manner.

The breakdown in collaboration between the district and J.M.'s parents occurred because of the disagreement over instruction in J.M.'s bedroom. "IDEA does not require school districts simply to accede to parents' demands without considering any suitable alternatives,"[41] and "[t]he right to provide meaningful input is simply not the right to dictate an outcome."[42] When it proposed transitioning services to public settings, the district "reviewed ADA accommodations that a public

---

[37] *Id.*

[38] *See, e.g.*, ECF No. 41 at 1017–1241, 1270–1305, 1396.

[39] *See id.* at 2519–20, 2525–27, 2248–51.

[40] *See Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1045 (5th Cir. 1989) ("Although Congress preferred education in the regular education environment, it also recognized that regular education is not a suitable setting for educating many handicapped children. . . . [T]he Act requires school officials to mainstream each child only to the maximum extent appropriate . . . .").

[41] *Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 657 (8th Cir. 1999).

[42] *White ex rel. White*, 343 F.3d at 380.

location would have to adhere to" and discussed other ways to safely transition while "work[ing] with the family and student."[43] The district offered a new plan the same day it decided J.M.'s bedroom was unsuitable, and redesigned that plan to account for the parents' concerns notwithstanding the parents' refusal to allow the district to reevaluate J.M. The record reflects regular meetings,[44] attempts to hold additional meetings,[45] consistent communication from the district,[46] and the district's desire for additional collaboration with J.M.'s private providers.[47] The district did not cause any collaborative shortfall, if any, and the Court concludes that the district reasonably coordinated a program for J.M.'s educational benefit.

### 4.    Demonstrated positive academic and non-academic benefits.

Again, the parties do not dispute that the IEP would have been effective, and the evidence supports that it was indeed effective during its short duration. J.M. showed educational progress and an attachment to his teachers within only nineteen days.[48] The Court concludes that the district reasonably coordinated a program to enable J.M. to receive educational benefits.

### C.    Conclusion.

Every factor supports the conclusion that the district offered, and briefly employed, an IEP reasonably calculated to enable J.M. to receive educational benefits. As the district did not cause the lapse in services and made diligent efforts to reevaluate J.M. and resume services, the Court finds that the district satisfied its IDEA obligations.

---

[43] ECF No. 41 at 2696.
[44] *See, e.g.*, *id.* at 1931, 2205, 2504–05, 2689–93.
[45] *See, e.g.*, *id.* at 1902–08
[46] *See, e.g.*, *id.* at 1114–15, 1902–30.
[47] *See, e.g.*, *id.* at 1905, 2233–34.
[48] *Id.* at 2519–20, 2525–27, 2248–51.

#### D.    *Rehabilitation Act and Americans with Disabilities Act.*

Plaintiffs' discrimination claims under the Rehabilitation Act and the Americans with Disabilities Act[49] are absent in their summary judgment motion[50] and appear in subsequent briefing only to dispute that they abandoned the claim. The Court considers the claims abandoned[51] for want of sufficient briefing and absence in Plaintiffs' dispositive motion.

#### E.    *Mandating Reevaluation Over Parental Objection.*

The district seeks to reevaluate J.M., over J.M's parents' objections, before resuming services. As explained above, "there is no exception to the rule that a school district has a right to test a student itself in order to evaluate or reevaluate a student's eligibility under IDEA."[52] "[W]here a school district articulates reasonable grounds for its necessity to conduct a medical reevaluation of a student, a lack of parental consent will not bar it from doing so."[53] The Hearing Officer found:

> Homebound is one of the most restrictive placements for educational services. The District must have an accurate, current picture of Student's need for homebound services and whether any accommodations can be put in place to allow Student to attend a regular campus with his non-disabled peers. Parents' refusal to even allow communication with the physician makes it essentially impossible for the District to determine the full extent of Student's current medical needs.[54]

The Hearing Officer concluded that, if they want continued homebound services, Plaintiffs must permit reevaluation.[55] The Court agrees.

---

[49] ECF No. 2 at 40–42.

[50] Plaintiffs suggest that they omitted the claim on the Court's instruction. ECF No. 44 at 18. The Court issued no such instruction.

[51] *See Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, 878 F.3d 478, 487 n.4 (5th Cir. 2017).

[52] *Andress*, 64 F.3d at 179.

[53] *Shelby S. ex rel. Kathleen T. v. Conroe Indep. Sch. Dist.*, 454 F.3d 450, 454 (5th Cir. 2006).

[54] ECF No. 41 at 35.

[55] *Id.* at 36.

***F.    Motion to Strike Summary Judgment Evidence.***

Defendant moves to strike evidence from the pleadings and other sources outside the administrative record. Having determined that Defendant is entitled to summary judgment based on the Court's review of the Hearing Officer's findings, the administrative record, and the parties' briefing, the motion to strike is moot.

## III.    CONCLUSION.

The Court **DENIES** Plaintiff's motion for summary judgment [ECF No. 39], **GRANTS** Defendant's motion for summary judgment [ECF No. 40], and **AFFIRMS** the Hearing Officer's decision. Plaintiffs take nothing. All other pending motions are **DENIED AS MOOT**.

**SO ORDERED**.

**SIGNED** and **ENTERED** on March 30, 2026.

_____
**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**